The plaintiffs in this case and the appellants, the Humphreys, Allards, Gibsons, and Martindales. Your Honor, we're here on a case that was dismissed by the Western District of Tennessee on Rule 12b-6, Motion to Dismiss, basically finding that the allegations in the 106-paragraph complaint filed by the plaintiffs did not plausibly state any cause of action against the City of Millington, the City of Millington Supervisors and Mayors under 1983 and state law. Okay. Okay. Why was the court wrong? Under the plaintiff's facts, what they basically, what the court said is we did not state facts that plausibly or above the speculative level that put them on notice that this Mr. Friar sexually abused or had proclivity to sexually abuse. And the proof that we put in the complaint or the allegations that we put in the complaint was, number one, he was terminated for failing to follow the rules and sexual impropriety with minors some 20 years before he got terminated as a police officer, that they failed to even do a background check on him as required by the laws when they allowed him to be. I mean, I guess to the extent you can, why don't you talk about specific defendants and explain why you think you made the requisite allegations as to particular defendants, not collectively, and why the district court was wrong in saying there was some omission as to the municipal liability or whatever. And Your Honor, I forgot, I had told the clerk before I wanted to reserve five minutes for rebuttal. Yeah, that's no problem. Okay. If I understand your briefing, your main claim is the city against the city and then against individuals as what you term supervisory, so not carrying out. So you have to prove a policy or practice, right? And then the supervisors were part of not carrying out or carrying out that policy or practice, right? Right. Okay. What is the policy? I'm curious. We've said in the past that one act essentially involving one plaintiff is not enough, right? And you have multiple plaintiffs here. I'm talking about like a failure to supervise or, is that what you're saying? Is that the city knew what was going on and just didn't do anything? What we're saying, Your Honor, in this particular case is in order to prove municipal, we have different claims. And Judge Kelfage probably gave me a better structure to kind of prepare my argument. We have a certain standard that we have to prove with municipal liability and then with respect to supervisory liability under 1983, we have to show that these particular supervisors weren't just performing their job in their supervisory thing. They have to somehow knowingly acquiesce in the underlying conduct. With respect to the municipal liability claim, what we have done in paragraph 82, we set forth without the aid of any discovery, we set forth A through I in policies. And we have attacked this on every particular level. We have attacked it on, number one, a failure to train. There are state minimum requirements that are required even for a reserve to even go on the job, which is go through. If he had been trained correctly, he wouldn't have molested these kids. Well, no. No. We're starting at screening. Okay? I mean, when he was hired, when he was hired, the requirements to be a reserve are minimal. They require 80 hours of training and they require five things. Is that, I mean, is it the municipal policy to have this training and to do the background checks and so on? It's the state statute. It's the state statute. And that's where I'm... Okay. But, I mean, you're saying there were inadequacies in hiring and training. Correct. This person. But, again, you have to show that they had a policy of inadequate hiring, a policy, not just that they failed to do it with respect to this friar guy. Right. Well, the problem... What pattern do you have, or what pattern do you let, you know... We don't have a pattern. Then doesn't that mean you lose on these claims? No. But, I mean, at this particular point, what we have is we do have a pattern of the city being advised that this officer has been engaging in inappropriate conduct over the course of two years and they did nothing. That's different than hiring and training. Right. And that failure to supervise. Right. Well... Why don't you focus in on failure to supervise? Yeah. For me, that's the most troubling part. For me, your best argument. Okay. I'll just tell you. Okay. Well, and that's fine. Just with respect to the failure to supervise, what we have done in that, and whenever we do these claims, we kind of look at everything kind of... If you're a plaintiff's lawyer and you do civil rights cases, you understand how hard  So, we always have a failure to train, supervise, and whatever. Just focus on failure to supervise. On supervise, what we have is once he became a reserve officer, at some point in time during that when he was a supervisor, there started to have problems and complaints. A fellow reserve officer, based on conduct that he observed and based on what he had Chief Deputy was that Mr. Fryer was in fact terminated for sexual misconduct with young girls back in 1970. This information was provided to Lieutenant Stambach. Lieutenant Stambach was the head officer in charge of reserves. When Lieutenant Stambach became the chief, he told them the same things. Not only that this person had done it in the past, but based on what this reserve officer had observed while Mr. Fryer was on duty. What do you allege that Lieutenant Stambach did or did not do? Excuse me, Your Honor? Do you allege anything that Lieutenant Stambach did or did not do in response to these reports? In the complaint, we said that there was nothing done. He was allowed to continue to do it. What I'm getting at is this is the first time he found out, he tells them, and the complaint alleges that on numerous occasions he kept telling Lieutenant Stambach. Lieutenant Stambach then became the chief. He told her when she was the chief. When Lieutenant Stambach left being the chief and Chief Tenet became the chief, this reserve told that person as well. While this was going on, also, one of the grandparents of one of the children that was molested talked to a Lieutenant Coleman and asked him to investigate this officer to assuage her fears that he was a pedophile. At another time... Let me clarify. There were actions that Officer Fryer was doing while he was with the city of Millington or whatever that the supervisors, you're alleging, were aware of. It's not just the past action with another police department that they were aware of. You're saying they were aware of things he was doing as an employee at the time and there was inaction on those? Yes, well it says in paragraph 23 that this person made the complaint about both things, about the previous conduct with Shelby County and his conduct towards young children while on duty. That's paragraph 23 of the complaint and we're using Humphrey, the second amended complaint. That information was provided to Lieutenant Stambach and to Chief Stambach and then to Chief Tenet. It was also put in a letter and given to the city of Millington, the city manager, Ed Haley. That's in paragraph 26 of the complaint. Also during this period of time, so we have allegations that he has sexually abused people in the past. We have allegations that he acted improper towards children in the present and then we have somebody from the YMCA come in and basically say, I went to my boss, they didn't do anything about it, I'm actually reporting this to you, Millington. Millington? Yes. Okay, so Stambach didn't get that report though? We have done a public records request, we can't find any report, but we have. We have no discovery in this case, your honor. We've done public records case and even the court, the court, and I know I'm out of time, the court noted that there were problems with the record keeping. In paragraph 23 when you say the reserve officer advised Stambach of Friar's prior misconduct on numerous occasions, what prior misconduct are you referring to? This is when he was, he basically actually raped a prisoner in the 70s. He was terminated. Really? I mean, we don't have it in the public, we haven't had discovery. You don't spell out what this prior misconduct was in the complaint, do you? No, because we don't, we got public records, we have what it says and all we have is hearsay. I couldn't under rule 11 say what it is, I couldn't, and that's the problem, we don't have discovery. Okay, you'll have your rebuttal. Thank you, your honor. Thank you, and we'll hear from Mr. McKinney. Good morning, your honor, Ed McKinney with the Memphis Bar, it's a privilege to be before the court this morning. I thought the last time I came here might be the most memorable case that I ever had up here. The Bengals were playing the Packers and Brett Favre had had four interceptions that day and he was cocked to throw the ball and some drunk jumped down on the field, took the ball out of his hand and ran about 20 yards, got gang tackled. The next morning I'm shaving to get ready to come here and he pled not guilty, and I'm just laughing. There are 63,000 witnesses to this, but this visit tops it. Our son passed the bar yesterday, we just found out, so Brett Favre has taken a second seat to our son. All right, well, congratulations. Thank you. Your honor, Mr. Clark was candid with the court. He did not spell out the prior misconduct, and the allegations in the complaint don't need to be accepted as true under Iqbal because there's no factual foundation for them. They rely upon, entirely, a Shelby County Sheriff's Office record, and all that record says is Friar was not conducting his Sheriff's Department business properly in taking offense reports and in transporting prisoners and stopping at a female's residence. Under no scenario does that plausibly allege facts that would put Millington on notice that Ricky Friar is the type of person who would likely commit sexual abuse against these minor children. No evidence whatsoever to suggest that. They have not plausibly pled any facts showing that a municipal policy or custom was the moving force behind the alleged violation of the children's... I'm sorry, your honor? The prior misconduct. The prior misconduct that they're alleging... The allegation is about the female prisoners, right? Yes. You're saying there's nothing that they can point to that would factually support that? I am. They don't say there was misconduct with the prisoners transporting prisoners and stopping at a female's residence. I'm sorry, what are you reading from? Oh, I'm sorry. These are just some notes. In the record, page 555, is the actual document itself, the Sheriff's Department record. If I recall, you're saying we ought to take that into account in our 12B6 analysis? No, I'm saying that you don't have to consider his allegations. They contradict the document that he's relying upon. This court has ruled on that issue several times. He's referring to a document, and we can consider the document itself? I think you can. I get it. Judge Lippman actually viewed that as being our allegation as to what the document said. It's not. We quoted what the document said. We attached the document to our motion to dismiss, which the court could and did properly consider. Which allegations, and if you remember paragraph numbers, which allegations and which paragraph numbers, again, are reviewed by this document? Okay. The... 22? Hold on one second, I can find it. It is paragraph 11 of the complaint, alleges that the plaintiff was, I mean, the fire was terminated for improper conduct regarding young female prisoners under his control and authority while serving as a law enforcement officer. That's the basis, that's the heart, the foundation of the plaintiff's case, that this document put us... So I'm with you that that makes it harder on the hiring claim, maybe on a training claim. What about on a failure to supervise, if they were aware of allegations of misconduct while he was an officer for a military... Good question. No such evidence in the record. No evidence of allegations... There's no allegation in the complaint, right? Yeah, it has to be allegations. Yeah, we just... I'm sorry. We have allegations in the complaint of that. Not of the conduct against these minors. It was vague, conclusory allegations of improper conduct. Nothing to suggest it was of a sexual nature. Are we talking about the police report thing or are we talking about the YMCA thing at this point? Well, both. At the YMCA, Judge Lippman dealt with that perfectly. That wasn't a crime. He took some photographs at the YMCA. That does not violate the Constitution, nor does it violate any Tennessee statute. So she eliminated that right off the top. The other allegations were some reserve officer said improper conduct. Judge Lippman addressed that properly. Vague, conclusory, she doesn't flesh it out. There's no further factual enhancement as required by ICBAL. And certainly nothing to suggest that it dealt with sexual abuse. And the reason they couldn't allege that is if this reserve officer came forth and said that he was aware of this and he didn't report it, he's committed a crime himself. They were careful not to make that allegation. I'm sorry. Can I ask you a question? Paragraph 23. The complaint says the reserve officer advised stand back of prior misconduct on numerous occasions based on Shelby County. So that's the document you're talking about. That's right. Okay. And based on his own personal observations of defendant Friar's improper conduct towards young female children while on duty. You're saying that is just, that's too vague, improper conduct. Right. Do you have a case that says that level of generality, so to speak, is insufficient? Because this isn't just sort of, I don't know, I mean, it's not obvious that it's, this isn't specific enough. I mean, so is there a case that deals with? Yes. The Board of Commissioners versus Brown deals with it directly. This court, I'm sorry. That case from this court? Supreme Court. This court has dealt with that in another issue also. And, hold on one second here, let me find it. The Tuminello versus Father Ryan High School case, 678 Federal Appendix 281, a 2017 case. It dealt with allegations against the school board. And this court said, Tuminello provides no facts of any teacher saw or heard the bullying that the plaintiffs told anyone at school was happening or any fact to support the inference that Father Ryan had any knowledge of the situation. That's what we're doing. Instead of bullying, we're dealing with sexual abuse. There's no allegation in this case in the complaint of any report of sexual abuse being given to any of the individual defendants or to the city, none whatsoever. And the Doe case, this court decided back in 2000, excuse me, 1996. Let me ask you this, so there's very, each complaint has very specific allegations about those particular plaintiffs, right? Yes, Your Honor. Okay. But you're saying there's no allegation in any of those complaints that any of those specific incidents were reported to the supervisors or whoever for them to do anything about? Exactly. The complaint is long on, I'm sorry, I think I interrupted you, I apologize. No, no, no, go ahead. The complaint's long on conclusory allegations and very short on facts. We submit that Judge Lippman got it. The facts about what he allegedly did to these individuals seem very specific to me. So I think those are specific. I'm not saying that gets them over the hump on a municipal liability claim, but those are specific, right? Specifics as to what Mr. Fryer did to the children, yes, they're specifically pled. But allegations that he had done this while he's, or that there were complaints made rather while he was employed by Millington to Millington, no. That's where it falls short. In the Doe versus Claiborne County case, this court said that to state a municipal liability claim under in an action theory, and that's exactly what they're claiming here, you have to show a clear and persistent pattern of sexual abuse by school employees. There's no allegation that anybody other than Fryer did this. The only allegation as to Fryer is that he did it off-duty while babysitting these children. That's fundamentally fatal to their case. The training claim fails because training deals with issues that the police department get involved with. Training duties are supposed to do. The screening cases, it fails because you have to show that they were likely to have realized that he was a pedophile based upon a review of his record. There's nothing in the record that would suggest that anywhere. Nothing that would put them on notice that it was a plainly obvious consequence of the hiring decision that he would sexually assault minors. That's where Judge Lipman absolutely knocked it out of the park in this case. She got it right. That seems like a really hard, and maybe it is, just a very hard claim to make if you don't have any discovery. I'm not saying you should just get discovery for the heck of it, but without getting any information about the internal hiring decisions, you have to have something to go on. I don't know what that would be. I guess a public records request maybe would get it. They did that. Mr. Clark is a very good lawyer. I've known him for a long, long time. He did multiple public records requests, but he couldn't claim something that he didn't have a factual basis for. That's where the claim against the city and the claim against the individual defendants fail as a matter of law. That's why Judge Lipman got it right in this case. A couple of the cases that I think are important for the court to consider, in fact you just had a decision earlier this summer that dealt with this issue, Croce versus New York Times Company at 930 F3rd 787. It was decided July 17th of this summer. If the factual assertions are inconsistent with the document that the complaint is relying upon, the court is not bound to accept that it's true. You've done this in several other cases too. The Everson versus Lease case at 556 F3rd 484, 2009 decision. Marvin versus City of Taylor, 509 F3rd 234, 2007 decision. Cates versus Crystal Clear Tech, 874 F3rd 530, 2017 decision. The document that's critical to their case does not support the allegations that they make. Therefore, those allegations are not entitled to a presumption of truth. But that only pertains to the allegation that he was terminated, that Shelby County's Sheriff Department terminated him for sexual misconduct. Yes, yes. So if we take that out, we still have the reserve officer allegedly saying that he had seen firsthand this guy's improper conduct towards young female children while on duty, right? Yes. And also the YMCA report, right? Isn't that? Well, that's in the record, yes, Your Honor. But like I say, Judge Lippman dealt with that directly. But that isn't evidence of any unconstitutional action. It's simply- What about a stepmother calling about a possible pedophilia? That, again, was vague. All she asked for, Judge Bush, is for a background investigation just to assuage her concerns. And the background investigation would have done nothing other than spine the document that we're talking about that would not have put them on notice of anything. But the call itself, I mean, there's a lot of smoke on these allegations that's starting to come into the air around Fryer. And, I mean, at some point, maybe they have an obligation, at least at this stage in the case, we have to say, you know, they should have known to look into this and take some sort of, you know, try to take some sort of action. That's certainly their theory, Your Honor, but the case law doesn't back that up. And the Board of Commissioners versus Brown, I think, addresses that. To test the link between the hiring decision and the plaintiff's injuries, the court has to ask whether a review of his record should have concluded that the use of excessive force in that case, in this case, child abuse, would be a plainly obvious consequence of the hiring decision. That's a strong burden. The Supreme Court's imposed a strong burden. I don't think we're focused on the hiring issue at the moment. Okay. We're focused on the failure to supervise. So it's after he's there, at which point you have all the, I mean, like the maximum information. The stuff that, okay, I mean, not that he had misconduct with young girls. That wasn't reason, but he did, you know, stop a van and stop at some woman's house. Okay. So that's unusual. And he got fired for it. And then we've got this reserve officer very persistently, these are all the allegations, very persistently warning about this guy, saying that he's seen this guy act improper towards young girls while on duty. And then the YMCA person shows up and the stepmom calls. And I think Tenet and Stanback can be charged with all that knowledge. Well, actually, my time just... Okay. Well, I mean, whomever can be charged with that knowledge. You know, 12B6, isn't this getting to the point where an officer should have known that they, or these chiefs should have done something rather than, at least on these allegations, sort of continue to sleep through this until the guy gets caught red-handed? Your Honor, the Brown case addressed that. As to supervising, not hiring. That's what I'm talking about. Just allegations of improper conduct alone isn't enough to impose municipal liability. And on the supervisors, inaction alone isn't enough. I'm not, I don't think I'm talking about municipal liability. I think I'm talking about the liability of these two officers. But there's no allegation of active conduct on their part. That's where the complaint fails here. They simply didn't act. That is not enough to impose liability on them. Why? I mean, let's, hypothetically, if they had 10 reports that 10 different parents called and say, I saw him molest my child. And, you know, and stand back, or these two officers say, well, I don't know. They just don't react. They don't do anything. So another 10 get molested. Surely, they're liable. Your Honor, the briefs show that several of those individual defendants weren't even employed at the time he met the children. So there couldn't be any claims against them. That's why the judge dismissed them. Others weren't employed when he was hired. I'm talking about stand back and tenant. Okay. Supervisory claim based on these various reports that came in. Again, it's simply inaction on their part. That's not enough. That's not active conduct. Because, again, let's say, like I said, 10 parents call and say, they molested our girl. And you need to fire this guy. And then they don't do anything. Well, that's a whole different allegation there all together. But you're, categorically, you're suggesting that categorically, omission to act does not give rise to liability. This court has held that. I can't believe that would be true. Don't we have an inaction theory of municipal liability? We've articulated a test, haven't we? This court has rejected the inaction theory. Okay. Well, what case was that? I mean, I just can't, the hypo I gave you, saying inaction categorically can't give rise to liability, the hypo I gave you, 10 reports of rape, and they do nothing, but continue to let them have a badge, that there's no, you're saying there would be no liability in that hypothetical? If it's simply failure to act, yes, there's no liability. I just, I'm extremely skeptical. But if you have a case, I'm happy to read it. We cited them in our brief. I'm scrambling to try to find a particular. Okay. No, that's all right. Don't worry about it. All right. You want to take 30 seconds and wind up? Yes. Your Honor, the bottom line here, Judge Lipman found that they didn't provide the factual context that would render the allegations against the city and individual defendants plausible to give them the presumption of truth that would entitle them to go forward. She got it right. The complaints stopped short of the line between a possibility and a plausibility of entitlement to relief. And that's what Judge Lipman recognized. She did a very thorough job in this case. We also submit that there's an alternative basis, which would be under color of law. Nothing that this man did had anything whatsoever to do as far as babysitting at his apartment with his duties as a police officer. This was personal, private conduct on his part. No, I get that. Thank you, Your Honor. Thank you, sir. We'll hear rebuttal. Yes. What's your best case? Again, you've heard all this talk about qualified immunity, that you need a factually similar case. What's your most factually similar case for the potential liability of stand back and tenant, a case that would have told them, based on the reports that I just described, not including prior misconduct with young girls for the moment, but on the other reports, what's the case that you would point to that would tell them you've got to act or else you're going to be violating the rights, you're going to violate the Constitution? And with respect to the individual, you know, with respect to the supervisors, their individual liability. Correct. Stand back and tenant. Under stand back and tenant, they are, I had a case up here before the Sixth Circuit, Petro's versus City of Memphis. And the issue on supervisory liability, are we looking at the standard for the underlying constitutional violation? That's not what I'm asking. Right. Well, I mean, the issue is a supervisor cannot be deliberately indifferent to a known risk or. I mean, but this is the same conversation we had in the last case. Right. I'm not asking about the standard. Let's say the standard is clear, but the application of a standard to particular facts sometimes is not so clear, particularly to an officer in the field. So what, you can't prevail unless there is a case that would, that is similar enough factually that stand back and tenant should have known they needed to act on these reports. If you don't have that case, you'd probably lose. So I'm seeking your best argument as to, you know, what those cases might be. Dovey, Claiborne County, 103. Dovey, Claiborne County? Claiborne County, 103 F3rd 495. And then applying the, then Petro's versus City of Memphis. Okay. And for the standard. Oh, I'm sorry. What were the facts of those cases? How are they similar? Under. Similarities would you point to? Under Doe versus. Is Doe versus Claiborne the sexual abuse by the high school teacher? Yes. And what it held in that is that there is a, there is a clearly established. Right. Supervised, there are two things. I was going to address what the court asked about inaction. There is a municipal liability inaction theory. And Mr. Joe says that, doesn't he? Excuse me. Correct. Has a test in it, doesn't it? Correct. And that's where it says, it says there is no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the due process clause. If a supervisor has knowledge that somebody, if that is occurring, they have an obligation to act under all reasonable supervisory things. That is the factual similarity that I would argue. Okay. I would point out, Your Honor. And what about the other cases, the Petros? Petros, that basically, that goes through the whole standard of how a supervisor is liable. That it cannot be just based on the standard of general supervision. They have to participate in or knowingly acquiesce into the conduct. In that particular case, I was bringing up supervisory liability of the chief of police of the city of Memphis. And obviously he wasn't. Can I ask you this? Can there be supervisory liability for individuals without municipal liability? Are they liable in carrying out the policy itself, right? Is that what the theory is? At times they aren't. Sometimes they are acting in contravention of it. So if there can be rogue supervisors that get supervisory liability, but there wouldn't be municipal liability. I would agree with that. And it would go to knowledge. I mean, this case has, I mean, this is a law school exam. Municipal liability, qualified immunity, supervisory liability, and how that all reacts with the Tennessee Governmental Total Liability Act. And I wish, you know, this being my fourth time coming up here and arguing these very particular issues, I had a better answer. It just keeps getting more confusing. But let me just, if I can, in a nutshell, just basically say here. I have done everything I possibly can in this particular case to try to get information so I can draft a complaint and comply with Rule 11. I have written public records requests to everywhere I could, and I've got these things. The court even notes that the documents I got from Millington are not even consistent with each other. I found a reserve officer who said that thing that happened in the 70s, that was sexual molestation. And the 19th, the termination. You allege that in your complaint. I allege that in my complaint. But I mean, I can only allege what I can. And he told, you know, he put context around that original report. All right, so let me, that's an interesting point. So you're alleging in your complaint, as to the termination by Shelby County, that the reserve officer says it was based on, what paragraph is this? I think it's 23, Your Honor, let me read it. It's 23. And you obtained a document from Shelby County that says something different. But you're not relying, do you invoke that document in the complaint? I invoke that document to the extent that any department that hires another department would want to look at a termination. Right, so I mean, why would you have us, for purposes of our analysis, take the reserve officer's characterization of the reasons for termination at face value, rather than track what the document says? Because they're not inconsistent. The document says that they stopped at somebody's house. The document says, patrolman Fryer was not conducting his sheriff department business properly and making reports and transporting prisoners and stopping at a female's residence. That could mean he just stopped by mistake. I mean, all we have is that, that's the whole amount of the thing. You're also alleging the reserve officer told the Milligan folks that the document didn't say everything that happened. Correct. There's more, in fact, there's- So that's very helpful. What complaint, what number? I don't know what number it is, you need to tell us. Paragraph 21, in addition, you know, I say the city of Millington were provided with specific information that Fryer had been previously fired for sexual misconduct with young girls, and then paragraph 22, that's where he says it. But what Judge Bush is saying, he's talking about is, is there an allegation that says, don't believe the document, believe me? No, that's just what I got. Oh. I mean, they didn't- So the reserve officer didn't say to somebody, don't believe that document. No. I'm telling you, I was there- He's saying, why we have fire here on the thing? That's the guy that was terminated for messing around with young girls that the chief deputy told me. I mean, Millington never got the document, I got the document. They're saying the document wouldn't matter, because that's the only defense they have to it, because they never looked at it. I've received it. Thank you, Your Honors. Thank you both for your arguments. The case is submitted. Clerk, may I adjourn the court? This is honor four.